# United States Court of Appeals for the Federal Circuit

2008-1545
(Serial No. 10/618,526)

IN RE FRITS JACOBUS FALLAUX, ROBERT CORNELIS HOEBEN,
ALEX JAN VAN DER EB, ABRAHAM BOUT, and DOMENICO VALERIO

David V. Trask, TraskBritt, P.C., of Salt Lake City, Utah, argued for appellants. With him on the brief were Edgar R. Cataxinos, and Steffen Soller.

William G. Jenks, Associate Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Arlington, Virginia, argued for the Director of the United States Patent and Trademark Office. With him on the brief were Raymond T. Chen, Solicitor, and Mary L. Kelly, Associate Solicitor.

Appealed from:  United States Patent and Trademark Office
                Board of Patent Appeals and Interferences

# United States Court of Appeals for the Federal Circuit

2008-1545
(Serial No. 10/618,526)

IN RE FRITS JACOBUS FALLAUX, ROBERT CORNELIS HOEBEN,
ALEX JAN VAN DER EB, ABRAHAM BOUT, and DOMENICO VALERIO

Appeal from the United States Patent and Trademark Office,
Board of Patent Appeals and Interferences.

_____

DECIDED:  May 6, 2009

_____

Before SCHALL, ARCHER, and MOORE, Circuit Judges.

MOORE, Circuit Judge.

Frits Jacobus Fallaux and the other appellants (collectively, Dr. Fallaux) are the named inventors on U.S. Patent Application No. 10/618,526 (the '526 or Fallaux application), filed on July 11, 2003.  The examiner rejected claims 1, 3-7, 10, 11, 16, 21-22, and 25 (the Fallaux claims) for obviousness-type double patenting in view of claims 43 and 44 of U.S. Patent No. 6,340,595 (the '595 patent) and claims 7, 32, and 35 of U.S. Patent No. 6,413,776 (the '776 patent) (collectively, the Vogels patents).  The Board of Patent Appeals and Interferences (Board) affirmed the examiner's final rejection.  Ex parte Fallaux, No. 2008-2251, 2008 WL 2463014 (B.P.A.I. June 17, 2008).  Dr. Fallaux appeals.  For the reasons set forth below, we affirm.

BACKGROUND

This appeal involves a patent family that includes the Fallaux application.  The Fallaux family originated in a Patent Cooperation Treaty priority document filed on June

15, 1995. The first U.S. application in the family, U.S. Patent Application No. 08/793,170 (the '170 application), was filed on March 25, 1997. It issued as U.S. Patent No. 5,994,128 on November 30, 1999. Four subsequent continuing patent applications resulted in three patents issued in 2001, 2003, and 2006. The fifth continuing application—the Fallaux application—was filed on July 11, 2003, claiming priority to the March 25, 1997 application. The reference patents for the double patenting rejection on appeal—the Vogels patents—are related to the Fallaux application only by way of a single common inventor—Abraham Bout.[1] The first of the Vogels patents—the '776 patent—was filed for on June 12, 1998 and issued on July 2, 2002. The '595 patent was filed for on July 21, 1999, and issued on January 22, 2002.

The examiner applied the one-way test to reject the Fallaux claims for obviousness-type or non-statutory double patenting in view of claims 43 and 44 of the '595 patent and claims 7, 32, and 35 of the '776 patent (the Vogels claims). Dr. Fallaux attempted to overcome the rejection by arguing that the examiner should have applied the two-way test for obviousness-type double patenting. Under the two-way test, the examiner additionally would have been required to show that the Vogels claims were obvious in view of the Fallaux claims. The examiner agreed with Dr. Fallaux that under the two-way test, the Fallaux claims would not be subject to an obviousness-type

---

[1] Neither party raised or argued the question of whether a patent may be used as a reference for an obviousness-type double patenting rejection where the patent shares only a common inventor with the application, rather than an identical inventive entity or a common assignee. The Manual of Patent Examination Procedure (MPEP) allows such a rejection. See § 804 ¶ I.A (8th ed., rev. 7, 2008) ("Double patenting may exist between an issued patent and an application filed by the same inventive entity, or by a different inventive entity having a common inventor, and/or by a common assignee/owner."). This opinion should not be read to decide or endorse the PTO's view on this issue.

double patenting rejection. But the examiner did not agree that Dr. Fallaux was entitled to the two-way test because Dr. Fallaux did not "argue, much less provide evidence that, the issuance of the [Vogels] patents prior to the instant application was due to administrative delay on the part of the PTO." In particular, the examiner found that the subject matter claimed in the Fallaux application "could have been claimed and been issued in any of" the earlier-issued Fallaux family patents.

On appeal to the Board, Dr. Fallaux argued only that he was entitled to the two-way test. The Board affirmed the final rejection of the examiner, finding that Dr. Fallaux "presented no evidence or reason why the [Fallaux] claims could not have been filed in the original application in this series, [the '170 application,] which was filed on March 25, 1997, which would have predated either of the Vogel[s] patents." Ex parte Fallaux, 2008 WL 2463014, slip op. at 6. Additionally, the Board found that Dr. Fallaux failed to "provide[ ] any evidence that the rates of prosecution were dictated by the USPTO. In fact, the evidence of record clearly shows that [Dr. Fallaux] dictated the rates of prosecution, choosing to" delay filing the Fallaux application and instead file and prosecute other applications in the Fallaux family during the period when the Vogels patents were filed for and issued. Id. at 7.

Dr. Fallaux timely appealed, arguing that he is entitled to rely on the two-way test. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

DISCUSSION

Double patenting is a question of law that we review de novo. In re Emert, 124 F.3d 1458, 1460 (Fed. Cir. 1997). The determination of whether a one-way or two-way analysis applies is also a question of law that we review without deference. Id. We

2008-1545                                3

review the Board's factual findings for substantial evidence. <u>Mazzari v. Rogan</u>, 323 F.3d 1000, 1005 (Fed. Cir. 2003).

"In determining double patenting, a one-way test is normally applied, in which 'the examiner asks whether the application claims are obvious over the patent claims.'" <u>In re Basell Poliolefine Italia S.P.A.</u>, 547 F.3d 1371, 1375 (Fed. Cir. 2008) (quoting <u>In re Berg</u>, 140 F.3d 1428, 1432 (Fed. Cir. 1998)). The two-way test "is a narrow exception to the general rule of the one-way test." <u>Berg</u>, 140 F.3d at 1432. When applying the two-way test, "the examiner also asks whether the patent claims are obvious over the application claims." <u>Id.</u> The two-way test arose out of the concern

> to prevent rejections for obviousness-type double patenting when the applicants filed first for a basic invention and later for an improvement, but, through no fault of the applicants, the PTO decided the applications in reverse order of filing, rejecting the basic application although it would have been allowed if the applications had been decided in the order of their filing.[2]

<u>Id.</u> "The two-way test is only appropriate in the unusual circumstance where, <u>inter alia</u>, the United States Patent and Trademark Office (PTO) is '<u>solely</u> responsible for the delay in causing the second-filed application to issue prior to the first.'" <u>Eli Lilly & Co. v. Barr Labs., Inc.</u>, 251 F.3d 955, 968 n.7 (Fed. Cir. 2001) (quoting <u>Berg</u>, 140 F.3d at 1437); <u>see also</u> <u>Basell</u>, 547 F.3d at 1376; <u>Emert</u>, 124 F.3d at 1461 (applying the one-way test because the applicant "had significant control over the rate of prosecution of the application," "was responsible for the delays in prosecution," and "orchestrated the rate of prosecution"); <u>In re Goodman</u>, 11 F.3d 1046, 1053 (Fed. Cir. 1993) (applying the

---

<sup>2</sup> Although such an analysis might prove complex, <u>see, e.g.</u>, <u>In re Braat</u>, 937 F.2d 589 (Fed. Cir. 1991), the PTO does not dispute Dr. Fallaux's characterization of the Fallaux claims as directed to a basic invention and the Vogels claims as directed to a later improvement. According to the PTO, the Vogels patents claim the use of a species of the generic invention claimed in the Fallaux claims.

one-way test because "PTO actions did not dictate the rate of prosecution"); MPEP § 804 ¶ II.B.1.(b) (8th ed., rev. 7, 2008) (advising that the two-way test should be applied when "there is administrative delay"). In short, the applicant is entitled to the narrow exception of the two-way test when the PTO is at fault for the delay that causes the improvement patent to issue prior to the basic patent.

In this case, the Board determined that Dr. Fallaux is not entitled to the two-way test because, as a factual matter, Dr. Fallaux was entirely responsible for the delay that caused the Vogels patents to issue prior to the filing of the Fallaux application. The Board found that Dr. Fallaux, not the PTO, "dictated" the rates of prosecution. Ex parte Fallaux, 2008 WL 2463014, slip op. at 7. Upon review of the record, we conclude that this fact finding is supported by substantial evidence. Dr. Fallaux did not show—nor is there any evidence to suggest—that the PTO shared any responsibility for the delay. There is no dispute that the specification of the '170 application would have supported the Fallaux claims. Nonetheless, Dr. Fallaux elected to prosecute other applications and delay filing the Fallaux application until six years after the '170 application was filed. During this six year period, the Vogels patents were filed for and issued.[3] In view of the Board's fact findings, we hold that the PTO was not responsible for the delay.

Dr. Fallaux contends that the delay should not be attributed to him because he prosecuted the patents in the Fallaux family "in the ordinary course of business," and did not "proactively manipulate[ ] prosecution for an improper purpose or to gain some advantage." The rule is not, as Dr. Fallaux seems to suggest, that an applicant is

---

[3] The PTO does not argue that Dr. Fallaux's claims could have been filed in the Vogels applications (the reference applications). Rather it argues that the claims could have been filed earlier in one of Dr. Fallaux's own related applications—a point which Dr. Fallaux does not dispute.

entitled to the two-way test absent proof of nefarious intent to manipulate prosecution. Rather, the narrow exception of the two-way test applies when the PTO is at fault for the delay that causes the improvement patent to issue prior to the basic patent.

The Board found that the delay was entirely attributable to Dr. Fallaux, and there is substantial evidence to uphold that finding. Dr. Fallaux argued to the examiner that he filed the Fallaux application "to cover a potential product of a competitor" that he learned about during the prosecution of the applications in the Fallaux family. This is significant not because it was improper, but rather because it reflects that the timing of the issuance of the patents was the result of Dr. Fallaux's decisions, and not the PTO's administrative delay. As Dr. Fallaux points out, "[i]t is a matter of speculation whether the claims on appeal would have issued before the Vogels patents had they been presented in the priority application." But by electing to file the Fallaux application in 2003, after the issuance of the Vogels patents, Dr. Fallaux foreclosed even the possibility of the Fallaux application issuing prior the Vogels patents. As discussed, there is substantial evidence to support that Board's fact finding that the applicant, not the PTO, is responsible for the delay.

Dr. Fallaux also argues that he is entitled to the two-way test under our holding in In re Braat, 937 F.2d 589 (Fed. Cir. 1991). We can extrapolate from facts disclosed in Braat that the application on appeal in that case was filed after issuance of the reference patents, though that issue is never explicitly discussed in Braat. 937 F.2d at 590. The Braat court was focused on whether the claims at issue were directed to a basic patent and the reference claims to an improvement in accordance with In re Borah, 354 F.2d 1009 (CCPA 1966). See Braat, 937 F.2d at 593-94 (holding that while

"[a] better characterization of the relationship between the inventions is as combination/subcombination," the reasoning of Borah is applicable). This reasoning is that "basic and improvement patents should not be penalized by the rate of progress of the applications through the PTO, a matter over which the applicant does not have complete control." Id. at 593 (discussing Borah, where the applicant filed the basic application fewer than six months after the improvement application was filed). In Braat, we stated that "[i]t is not [the applicant's] fault" that the claims in the reference patent issued first. Id. at 594. According to Dr. Fallaux, this means that similarly, he cannot be found at fault for choosing to file the Fallaux application after the Vogels patents issued. Unlike this case, in Braat the PTO did not argue or dispute the issue of fault for delay, and the Board did not make a finding of fault for delay in issuance. See Br. of Appellee at 10, In re Braat, 937 F.2d 589 (Fed. Cir. 1991) (No. 90-1470). There was no discussion about whether the claims could have been filed earlier in our opinion in Braat, the Board's decision in Braat, or any of the parties' briefs to us or to the Board in Braat. Nor did the Board make any finding of fault. Unlike Braat, here, the Board specifically found that Dr. Fallaux, and not the PTO, dictated the rates of prosecution of the patents in the Fallaux family, and substantial evidence supports this finding.

Braat cannot be read as a sweeping proclamation that, as a matter of law, where an applicant chooses to delay filing an application until after the issuance of a reference patent, he can still rely on the two-way test to overcome a double patenting rejection, especially in the absence of any discussion or analysis of such in Braat. Furthermore, reading this legal holding into Braat, as Dr. Fallaux urges us to do, would render Braat irreconcilable with the precedent that came later and squarely addressed the issue.

This case is, for example, nearly identical to Eli Lilly where the court held the two-way test not applicable where "the PTO was not solely responsible for the delay" because the applicant could have presented the claims earlier in one of its parent or grandparent applications. See Eli Lilly, 251 F.2d at 969 n.7;[4] see also Basell, 547 F.3d at 1376 (holding the two-way test inapplicable where the applicant failed to present the claims in earlier applications in the chain of priority—"Natta's actions, or inactions, had a direct effect on prosecution and thus were responsible for any delay in prosecution").

Finally, Dr. Fallaux argues that our cases refusing to allow applicants to rely on the two-way test are distinguishable because unlike the applicants in those cases, Dr. Fallaux is not seeking an unjustified patent term extension. See, e.g., In re Lonardo, 119 F.3d 960, 965 (Fed. Cir. 1997) ("The doctrine of double patenting is intended to prevent a patentee from obtaining a time-wise extension of [a] patent for the same invention or an obvious modification thereof."). It is true that the unjustified patent term extension justification for obviousness-type double patenting has limited force in this case. Indeed, this is surely true of many double patenting rejections today, in no small part because of the change in the Patent Act from a patent term of seventeen years from issuance to a term of twenty years from filing. See 35 U.S.C. § 154; Uruguay Round Agreements Act, Pub. L. No. 103-465, 108 Stat. 4809 (1994). Nonetheless, we

---

[4] Dr. Fallaux attempts to distinguish Eli Lilly by pointing to our statement that the parent application in Eli Lilly "engendered a progeny of divisional applications, continuing applications, and patents that rivals the Hapsburg legacy." 251 F.3d at 958. The application for the patent at issue in Eli Lilly was a continuation-in-part of a continuation application, which in turn stemmed from a divisional of the original parent application. Id. at 968 n.7. Thus, its family tree was even shorter than that of the Fallaux application. Further, although Eli Lilly filed its application twelve years after the original parent, we see no reasoned basis to distinguish this from the six years that Dr. Fallaux delayed for the purposes of whether the two-way test should apply.

do not think that we may disregard all of our cases relying on this justification for obviousness-type double patenting. In some cases there may still be the possibility of an unjust time-wise extension of a patent arising from patent term adjustment under § 154 or patent term extension under § 156.

Furthermore, there is a second justification for obviousness-type double patenting—harassment by multiple assignees. <u>See</u> <u>In re Van Ornum</u>, 686 F.2d 937, 944-48 (CCPA 1982) (approving of the requirement for common ownership in terminal disclaimers under 37 § C.F.R. 1.321); <u>In re Griswold</u>, 365 F.2d 834, 840 n.5 (CCPA 1966) (noting the co-ownership requirement is a creative solution to potential harassment suits from two separate patents); <u>see also</u> Robert A. Armitage, <u>Everything You Ever Wanted to Know About Double Patenting . . . but Never Realized that You Needed to Ask (from the Makers of Prozac)</u> at 4-5, available at http://www.ipo.org/AM/Template.cfm?Section=Search&section=Papers8&template=/CM /ContentDisplay.cfm&ContentFileID=424 (arguing that even after the Uruguay Round Agreements Act, double patenting doctrine still serves to prevent "a proliferation of patent monopoly rights for nearly identical subject matter [that] could be separately owned and independently enforced"). The harassment justification for obviousness-type double patenting is particularly pertinent here because the Fallaux application and the Vogels patents are not commonly owned. If the Fallaux application and the Vogels patents were commonly owned, the terminal disclaimer filed in this case would have been effective to overcome the double patenting rejection. We note that this defect was

of the applicant's creation as through assignment it allowed ownership of the applications to be divided among different entities.[5]

CONCLUSION

The Board correctly held that Dr. Fallaux cannot rely on the two-way test to overcome the rejection of the Fallaux claims for obviousness-type double patenting. The judgment below is

<u>AFFIRMED</u>.

---

[5]     Dr. Fallaux attempted to overcome the obviousness-type double patenting rejection by disclaiming the terminal period, if any, beyond June 14, 2016, of any patent granted on the Fallaux application. The examiner could not accept the disclaimer because the assignee of the Fallaux application, Crucell N.V., did not establish that it also owned the Vogels patents—a requirement for terminal disclaimers under 37 C.F.R. § 1.321. Initially, the patents in both families were owned by the same entity, IntroGene. On October 18, 2001, IntroGene assigned the Vogels patents to Crucell N.V. Crucell N.V. assigned the Vogels patents to Galapagos Genomics B.V. on the same day. On March 23, 2006, IntroGene assigned the Fallaux application to Crucell N.V., which still owns the application. Crucell N.V. filed the terminal disclaimer on May 1, 2007, after it divided the ownership of the Fallaux application and Vogels patents.