RADER, Chief Judge,
dissenting.
Today the court expands the judicially-created doctrine of obviousness-type double patenting. The court holds that a later-issued, but earlier-expiring patent can invalidate a first-issued, but later expiring patent — even where the patents are subject to a requirement of common ownership. Because this expansion is unwarranted, I respectfully dissent.
I.
To be clear, my dissent today is not meant to disparage the doctrine of obviousness-type double patenting. Undoubtedly, the doctrine has served a useful purpose over the years. Immediately prior to the Uruguay Round Agreements Act (URAA) and the General Agreement on Tariffs and Trade (GATT), a U.S. patent enjoyed a term of 17 years from its issue date. A patentee could file successive continuations and obtain additional patent term for obvious modifications of its earlier claims where its earlier patents and applications did not qualify as prior art, and perhaps do so ad infinitum. Courts used obviousness-type double patenting to curtail that practice. See, e.g., Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 967 (Fed.Cir.2001) (“The judicially-created doctrine of obviousness-type double patenting cements that legislative limitation [on the duration of the patentee’s right to exclude] by prohibiting a party from obtaining an extension of the right to exclude through claims in a later patent that are *1218 not patentably distinct from claims in a commonly owned earlier patent.” (citation omitted)).
However, based on changes implemented as part of the GATT and URAA, the term of a patent is now generally limited to 20 years from its filing date or the earliest claimed filing date under 85 U.S.C. §§ 120, 121 or 365(c). 85 U.S.C. § 154(a)(2). With this change, successive continuations generally do not result in any additional patent term. Rather, the filing date of the earliest member of a patent family limits the rest of the related patents. Id. Thus a primary motivation behind the doctrine — preventing the effective extension of patent term — is largely no longer applicable. Cf. In re Fallaux, 564 F.3d 1313, 1319 (Fed.Cir.2009) (noting that under post-GATT patent terms a double patenting issue may arise in limited instances based on changes to patent terms under 35 U.S.C. §§ 154, 156).
That being said, the doctrine of obviousness-type double patenting is also predicated on a second underlying policy concern — preventing multiple infringement suits by different assignees asserting essentially the same patented invention. Id. This secondary and far less prevalent concern receives some notice in this court’s case law. See, e.g., In re Griswold, 53 C.C.P.A. 1565, 365 F.2d 834, 840 n. 5 (1966). However, in this case, neither policy concern justifies an extension of double patenting.
II.
The court correctly frames the narrow question presented in this appeal: “Can a patent that issues after but expires before another patent qualify as a double patenting reference for that other patent?” Maj. Op. at 1211-12. But the court then proceeds to craft a new rule to answer the question in the affirmative. According to the court, the expiration dates of the patents govern the inquiry irrespective of filing or issue dates. Maj. Op. at 1215.
As an initial matter, I would proceed more cautiously before articulating a new rule to address this novel situation. In my opinion, courts should be reluctant to create or expand judge-made exceptions to statutory grants. See, e.g., W. Union Tel. Co. v. Lenroot, 323 U.S. 490, 514, 65 S.Ct. 335, 89 L.Ed. 414 (1945) (Murphy, J., dissenting) (“[T]he judicial function does not allow us to disregard that which Congress has plainly and constitutionally decreed and to formulate exceptions which we think, for practical reasons, Congress might have made had it thought more about the problem.”); United States v. Rutherford, 442 U.S. 544, 559, 99 S.Ct. 2470, 61 L.Ed.2d 68 (1979) (“Whether, as a policy matter, an exemption should be created is a question for legislative judgment, not judicial inference.”). Thus, I would view the question through the lens of judicial restraint.
With this view, I see no reason to apply double patenting under our two accepted justifications for the doctrine. First, this case does not raise the policy concern regarding subsequent extensions of patent term. Gilead’s subsequent '375 patent unquestionably did not extend the term of the earlier-issuing '483 patent. The '375 patent claims priority to an earlier filing date and consequently expires first. Notably, if the '375 patent had never issued, Gilead would certainly be entitled to the '483 patent’s 2016 expiration date.
Second, this ease does not involve the potential for harassment by multiple assignees asserting essentially the same patented invention. E.g., Fallaux, 564 F.3d at 1319. Here, the '375 patent is subject to a terminal disclaimer with respect to the '483 patent and thus is only enforceable so *1219 long as it and the '483 patent are commonly owned. J.A. 546-47. The risk of separate parties suing on the two patents is therefore adequately mitigated.
Against this backdrop, the question becomes whether Gilead’s conduct warrants the creation of a new rule proscribing its patent rights. Because both of the accepted justifications for the obviousness-type double patent doctrine are not implicated, I would find Gilead’s conduct does not rise to that level.
III.
Respectfully, I find the court’s reasoning to the contrary unpersuasive. Under 35 U.S.C. § 154(b) a patentee may not maintain its earliest possible priority date while seeking to extend the expiration date of subsequent patent claims. Rather, to obtain a longer patent term, a patentee must forfeit its earlier claim to priority and subject any new patent to intervening prior art. Gilead followed that precise approved course. Instead of claiming priority to the '375 patent family, Gilead filed the application that ultimately issued as the '483 patent as a separate family. In the process, Gilead gave up roughly 10 months of priority. Consequently, the '483 patent is subject to roughly 10 months of intervening prior art.
Nevertheless, despite sacrificing almost a year of priority, the court contends that Gilead acted improperly by continuing to pursue claims in the application that issued as the '375 patent. To support this conclusion, the court holds that in the case of competing patents, a patentee is stuck with the earliest expiration date irrespective of filing or issue dates. Maj. Op. at 1215. To justify this new rule, the court relies on the flawed assumption that upon the expiration of a patent, the public obtains an absolute right to use the previously-claimed subject matter. Maj. Op. at 1214. I think the issue is more nuanced than the court acknowledges.
To begin with, not even a patentee has the affirmative right to use its claimed subject matter. Spindelfabrik Suessen-Schurr, Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft, 829 F.2d 1075, 1081 (Fed.Cir.1987); see also 35 U.S.C. § 154(a)(1). Thus, when a patent expires, this court cannot assume that such a right (which never existed) transfers to the public. Additionally, the court’s assumption ignores the possible existence of overlapping patents. For example, where a first patent claims a genus, upon expiration of that patent, the public may still be excluded from practicing the full scope of the expired claim due to subsequent patents on various species contained within the prior genus claim. Still other legal and regulatory bars may prohibit the public from practicing the claimed subject matter as well. For example, certain claims in the '483 patent refer to methods of treating influenza using a drug compound. Consequently, certain uses of that method are subject to prior approval from the Food and Drug Administration. I believe this demonstrates that upon expiration of a patent, the public does not necessarily obtain an unfettered, affirmative right to practice the claims.
At the same time a patentee may not continue to claim the exclusive right to particular subject matter beyond the expiration of its patent. Such a proposition is the antithesis of the quid pro quo of the patent system. Instead, it is more accurate to say that upon expiration of a patent, that particular expired patent is no longer a bar to the public’s use of the claimed subject matter. Further, any subsequent attempts to prolong the initial patent term using obvious variants should not bar the public from practicing the initially *1220 claimed subject matter. However, it is important to note that subsequent improvements, if satisfying the criteria for patentability, could bar the public from practicing some subject matter encompassed by expired patents. Finally, consistent with our precedent, I would find that efforts to obtain patentably indistinct claims in a patent having common inven-torship but owned by a different entity should also not bar the public. These narrow limitations on patentability and validity are consistent with established case law. This case does not compel the court to go any further.
Accordingly, I differ with the court on the effect this court should give to subsequent attempts by a patent owner to seek exclusive rights to obvious variants that do not extend the term of its earlier patent. Because this court is not presented with same-invention double patenting, I am aware of no argument that the Patent Act precludes such conduct. And because the patents in this case are subject to a common ownership requirement, that concern provides no basis for complaining of Gilead’s conduct. Simply put, the only relevant question is whether this court should extend our case law to encompass this new behavior exhibited by Gilead.
As I began at the outset, I view that question through the lens of judicial restraint. To be sure, condoning Gilead’s conduct may lead to some strategizing during prosecution to maximize patent term and obtain varying priority dates to hedge against intervening prior art. But I do not perceive Gilead’s conduct as so manifestly unreasonable to warrant a new judicially-created exception to invalidate patents. Cf. Rutherford, 442 U.S. at 555, 99 S.Ct. 2470 (“[F]ederal courts do not sit as councils of revision, empowered to rewrite legislation in accord with their own conceptions of prudent public policy.... Only when a literal construction of a statute yields results so manifestly unreasonable that they could not fairly be attributed to congressional design will an exception to statutory language be judicially implied.”) (citations omitted).
As a final point, I think a number of concerns counsel for a more restrained approach. Chief among those is the interplay between today’s decision and the new “first-inventor-to-file” provision of the Le-ahy-Smith America Invents Act, Pub.L. No. 112-29 § 3, 125 Stat. 285-86 (2011) (“the AIA”). Under the AIA’s new “first-inventor-to-file” framework, prospective patentees are under tremendous pressure to file their applications early. I am concerned that today’s opinion will have unforeseen consequences in this new race to the Patent Office.
Accordingly, for the foregoing reasons, I respectfully dissent.