NEWMAN, Circuit Judge,
dissenting.
In accordance with the law of double patenting, double patenting does not ap *1151 ply when the application and patent are of separate ownership and have separate inventive entities. In such situation the appropriate examination path is on the merits of the invention, or through the interference or derivation procedures, or other standard protocol as may apply in the particular situation. The technology here appears to involve generic and species inventions; such separate developments are not unusual, and there exists extensive precedent to guide patentability. This court need not create a new protocol wherein the contributions of distinct entities and separate ownership are rejected for “double patenting” instead of examined under the established rules.
The court today not only finds “double patenting” when there is neither common inventorship nor common ownership, but having so found withholds the standard remedy of the terminal disclaimer, and simply denies the application. This novel ruling is contrary to statute and precedent, with no policy justification for changing the law. I respectfully dissent.
Discussion
In the entire body of precedent relating to rejection on the ground of double patenting, the rejected patents or applications were of common inventorship or common ownership. This is illustrated in early examples such as Miller v. Eagle Manufacturing, 151 U.S. 186, 14 S.Ct. 310, 38 L.Ed. 121 (1894), where the inventor had divided his patent application into two separate applications that issued as patents, and the Court held that the second patent could only be justified if the later-issued claim “is clearly distinct from and independent of, one previously patented.” Id. at 199-200, 14 S.Ct. 310. Earlier, in James v. Campbell, 104 U.S. (14 Otto.) 356, 382, 26 L.Ed. 786 (1882), the Court stated that “[i]t is hardly necessary to remark that the patentee could not include in a subsequent patent any invention embraced or described in a prior one granted to himself, any more than he could an invention embraced or described in a prior patent granted to a third person.”
The Court of Customs and Patent Appeals applied this precedent in cases such as In re Barge, 25 CCPA 1058, 96 F.2d 314, 316 (1938), where the court explained that “an applicant ... is not entitled to two patents if his disclosure in the later application is not inventive over that for which he has already received a patent.” The concept was extended to commonly-owned patents, as in In re Borcherdt, 39 CCPA 1045, 197 F.2d 550, 551 (1952) (“two patents may not issue for different forms or species of the same invention when they are non-inventively different” and “the same principle applies to patents of different inventors granted to a common assign-ee”); see also In re Newton, 56 CCPA 1463, 414 F.2d 1400 (1969); In re Bowers, 53 CCPA 1590, 359 F.2d 886 (1966).
The CCPA referred to the policy of avoiding extension of the term of exclusivity, and also recognized reasons such as “possible harassment by multiple assignees, inconvenience to the Patent Office, and the possibility that one might avoid the effect of file wrapper estoppel.” In re Robeson, 51 CCPA 1271, 331 F.2d 610, 615 (1964). Discussing the possibility of harassment, on which my colleagues on this panel place emphasis, the court stated:
[Issuance of multiple patents] is a very common situation existing with respect to genus and species, dominant and subservient, and ‘overlapping’ patents, whenever there are unobvious differences, all granted in strict accordance with law and presumed valid. Yet we do not see the courts bogged down with harassment suits. In those rare instances where there is a situation which a *1152 court can be persuaded amounts to harassment, it has means for dealing with it by inflicting attorney’s fees. This can be a powerful deterrent.
In re Jentoft, 55 CCPA 1026, 392 F.2d 633, 641 (1968); see In re Eckel, 55 CCPA 1068, 393 F.2d 848, 857 (1968).
The CCPA elaborated on the definition of inventive entity as a predicate for double patenting. In In re Land and Rogers, 54 CCPA 806, 368 F.2d 866, 879 (1966) the court stated:
The question here is not merely whether A or B, individually, is or is not “another” to A & B jointly on a theory of “different legal entities.” Of course they are different “entities” in the sense that an invention made jointly by A & B cannot be the sole invention of A or B and vice versa, and certain legal consequences flow from such fact, such as who must apply for patent.
The Manual of Patenting Examining Procedure has also defined “inventive entity” for purposes of the law of double patenting:
The inventive entity is the sole inventor or the joint inventors listed on a patent or patent application. A sole inventor in one application and joint inventors in another application cannot constitute a single or the same entity, even if the sole inventor is one of the joint inventors. Likewise, two sets of joint inventors do not constitute a single inventive entity if any individual inventor is included in one set who is not also included in the other set.
MPEP § 804 (4th ed.1979).[1] The Federal Circuit observed in In re Kaplan, 789 F.2d 1574 (Fed.Cir.1986), that: “It is a given, of course, that a sole inventor and joint inventors including the sole inventor are separate ‘legal entities,’ a legal proposition from which certain legal consequences flow.”
The law of double patenting evolved in various factual situations, but never departed from the requirement of either common inventorship or common ownership, and never departed from the available remedy of terminal disclaimer for obviousness-type double patenting. This remedy draws on the 1952 codification that any patentee or applicant may “disclaim or dedicate to the public the entire term, or any terminal part of the term, of the patent granted or to be granted,” 35 U.S.C. § 253. As explained by P.J. Federico, Examiner-in-Chief of the United States Patent Office and a draftsman of the 1952 Act:
No specific reason for this provision appears in the printed record, but its proponents contemplated that it might be effective in some instances, in combating a defense of double patenting, to permit the patentee to cut back the term of a later issued patent so as to expire at the same time as the earlier issued patent and thus eliminate any charge of extension of monopoly.
35 U.S.C.A. 1, 49 (1954), reprinted at 75 J. Pat. & Trademark Off. Soc’y 161 (1993).
In In re Griswold, 53 CCPA 1565, 365 F.2d 834 (1966), the CCPA reviewed a terminal disclaimer that included a provision that the second patent would “be enforceable only for and during such period that the legal title to said patent and to such right to recover shall be the same respectively as” the first patent. Id. at 840 n. 5. The CCPA remarked that such a provision would eliminate any possibility of harassment if the two patents later came into separate hands, and the Patent Office duly amended its Rule 321 to require that *1153 terminal disclaimers contain such a “non-alienation” agreement. 37 C.F.R. § 1.321(b).
The CCPA upheld this authority to require nonalienation in In re Van Ornum, 686 F.2d 937, 948 (CCPA 1982), where the inventors of the patent and the application had already assigned rights to different companies; the court held that there was double patenting, for there was a common inventive entity, but that the remedy of terminal disclaimer was not available because the patentee had purposely divided ownership in the patent and application and could not comply with the non-alienation requirement. My colleagues state that Van Ornum supports their application of double patenting in this ease; if anything, Van Ornum supports the contrary. In In re Longi, 759 F.2d 887, 895 (Fed.Cir.1985), this court referred to the “important legislative history” of the enactment in 1984 of § 103(c)(1) relating to commonly owned applications of different inventive entities, whereby the applications are subject to terminal disclaimer in order to avoid unwarranted extension of the term of patent protection:
The Committee expects that the Patent and Trademark Office will reinstitute in appropriate circumstances the practice of rejecting claims in commonly owned applications of different inventive entities on the ground of double patenting. This will be necessary in order to prevent an organization from obtaining two or more patents with different expiration dates covering nearly identical subject matter.
Patent Law Amendment Act of 1984, 130 Cong. Rec. H10,527 (1984). The legislative record explained that when the ownership is the same, whether or not the inventor-ship is different, rejection on the ground of double patenting can be overcome “by disclaiming the terminal portion of the term of the later patent, thereby eliminating the problem of extending patent life.” Id. The panel majority misapplies § 103(c)(1), for the statute is directed to situations of common ownership; it does not provide that when there is not common ownership there can be no patent.
Until today, there has been no departure from the principles of the law of double patenting. In the case at bar, neither a common inventive entity not common ownership is present. The application in suit is assigned to the California Institute of Technology; and is for a protein or peptide with a transglutaminase substrate and a polypeptide growth factor. It has four inventors that include Hubbell and Schense; the provisional application’s filing date is April 3, 1997. In 1998 Hubbell and Schense joined the faculty at the Eidgenossische Technische Hochschule Zurich (ETHZ) and the Universitat Zurich, and a parent application directed to a species within the genus was filed on August 27, 1998 and assigned to ETHZ, with three inventors that include Hubbell and Schense.
The panel majority does not dispute that these are different inventive entities and that there is not common ownership. However, the court rules that obviousness-type double patenting applies. If there indeed is obviousness-type double patenting, then a terminal disclaimer is necessarily available. However, the court rules that a terminal disclaimer is not available because there is not common ownership. Yet if there is not common ownership or common inventorship, there cannot be double patenting. On this circularity, the court denies the CalTech application on the ground of double patenting.
The panel majority miscites In re Fallaux, 564 F.3d 1313 (Fed.Cir.2009), for that ruling disclaimed the holding for which its authority is now asserted. The Fallaux court referred to a provision in the MPEP and stated that “This opinion should not be read to decide or endorse the PTO’s view on this issue.” Id. at 1316 n. 1. My colleagues now cite this footnote *1154 as authority for the holding it declined to make.
The CalTech application and the ETHZ patent were never commonly owned, unlike those of Fallaux and Van Omum, where ownership was divided during pendency. Genus and species patents are not unusual; there is no suggestion of any attempt to “game” the system.[2] From the court’s flawed ruling on incorrect law, I respectfully dissent.

. The panel majority's footnote 4 criticizes this citation to an earlier version of the MPEP that defined "inventive entity”; however, this has always been the definition of "inventive entity,” extensively embodied injudicial opinions, e.g., Leviton Mfg. Co., Inc. v. Universal Sec. Instruments, Inc., 606 F.3d 1353, 1358 (Fed.Cir.2010), and as used in the current MPEP § 804 (8th ed. 2012). I also remark on the panel majority’s ruling that "inventive entity” in double patenting law depends on the relative contribution of the joint inventors. Maj. Op. at 1148. That theory is devoid of foundation.

. CalTech has asked for equitable relief in the form of authorization to file a terminal disclaimer; I would not foreclose such a possibility.